# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIRANDA G. CHALK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-085-RAW-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Miranda G. Chalk requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born September 3, 1986, and was twenty-four years old at the time of the administrative hearing (Tr. 56). She completed the eleventh grade while taking special education classes, and has worked as a babysitter, child care attendant, fast food worker, home health aide, and telephone operator (Tr. 41, 186). The claimant alleges that she has been unable to work since February 25, 2009, due to bipolar/manic depression, attention deficit hyperactivity disorder, anxiety disorder, learning disorder, asthmatic bronchitis, and a hearing disorder (Tr. 180).

### Procedural History

On April 20, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Stacy Paddack conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 29, 2011 (Tr. 31-43). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.1967(b), *i. e.*, she could lift/carry 20 pounds occasionally and 10 pounds frequently, and sit/stand/walk six hours in an eight-hour workday, but that she (i) may never climb ladders, ropes, or scaffolds; (ii) may occasionally climb stairs; (iii) may occasionally balance, stoop, kneel, crouch, and crawl; (iv) must avoid concentrated exposure to fumes, odors, dusts, gases, and workplace hazards such as moving machinery and unprotected heights; (v) may perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving simple, work-related decisions with few, if any, workplace changes; and (vi) may only occasionally interact with the public (Tr. 36). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economy, *i. e.*, clothing sorter, ticket seller, and mail sorter (Tr. 41-42).

**Review**

The claimant contends that the ALJ erred: (i) by improperly assessing her credibility, (ii) by failing to include sufficient non-exertional limitations in the claimant's RFC corresponding to her severe mental impairments, and (iii) by failing to fully develop the record. Because the ALJ *did* fail to properly account for all of the claimant's severe impairments in formulating her RFC, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The record reveals that the claimant had the severe impairments of major depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), asthma, and obesity, as well as the nonsevere impairments of left ovarian cyst, hypertension, and bronchitis (Tr. 33-34). The claimant went to Anita B. DeSonia, MS, for counseling beginning in March 2010. After a month of treatment, Ms. DeSonia prepared a letter stating that the claimant should be able to function in the workplace once she was stable on her medications and involved in therapy (Tr. 509). The treatment notes indicate that the claimant reported some improvement and decreased depressive symptoms, but on January 12, 2011, she had increased depression, increased anxiety, as well as increased suicidal ideation (Tr. 485). During the same time, Dr. Rajni Patel managed the claimant's medications. He assessed her with bi-polar disorder, current episode depressed, without psychotic feature; psychotic disorder NOS; PTSD, ADHD, combined type; possible dissociative disorder; rule out personality disorder (Tr. 528). As to her Axis IV diagnosis, he referred to it as extreme to catastrophic, noting stressors of sexual abuse, poor relationship with her mother, significant depression, and anxiety related social impairment. He assessed her with a current GAF of 47, and a GAF of 59 as the highest in the past year (Tr. 528).

On December 14, 2009, Robert Kline, Psy.D., completed a mental evaluation of the claimant. She reported a history of a potential brain injury when she was in high school, as well as admission to a facility for suicidal ideation when she was seventeen years old, and that she took her mother's Prozac, but that it did not really work for her (Tr. 430-431). She stated that she was "about to panic" during the interview, but Dr.

Kline noted that her mood expression was within normal limits, rational and logical, although she had significant loosening of associations and rambling speech (Tr. 431). His impression of Axis I diagnoses were: major depressive disorder, recurrent, mild to moderate; anxiety disorder, not otherwise specified; bipolar disorder, by history; learning disorder, by history; along with a GAF of 60 (Tr. 432).

On December 13, 2010, Brian Boehman, Ph.D., completed a psychological examination of the claimant (Tr. 477). Dr. Boehman administered the WAIS-IV test, finding that the claimant has a full scale IQ score of 88 (low average), with a verbal comprehension score of 85 and a perceptual reasoning score of 92 (Tr. 478). Following the administration of the Woodcock Johnson II: Achievement test, the claimant's performance was found to be low average in broad reading, mathematics, math calculation skills, written language, and written expression (Tr. 480). As for the Woodcock Johnson II: Cognitive test, the claimant's scores revealed verbal ability and thinking ability in the low range, and cognitive efficiency in the low average range (Tr. 481). His diagnostic impression was: PTSD, major depressive disorder, recurrent, severe without psychotic features, and a GAF of 55 (Tr. 481). In his summary, Dr. Boehman noted that the claimant's levels of depression and anxiety were evidenced through the evaluation, and that her overall prognosis was uncertain. He indicated she was capable of participating in an educational environment, but she would likely be more suited in a vocational program. Additionally, he stated that the claimant "has the skills available to succeed, [but] she lacks the motivation and resilience to successfully complete her educational program" (Tr. 482). He indicated that if the claimant were stabilized she

could function in the workplace, but that she would be better suited for positions requiring minimal contact with others and minimal responsibility (Tr. 482).

Following a request for administrative information regarding the claimant's high school education, C. McCauley, the claimant's special education teacher completed the form on April 25, 2009. She indicated that the claimant had a fifth grade reading level, a second grade math level, and a fifth grade writing level, and that her educational disabilities included emotional disturbance/behavior disorder and a learning disability (Tr. 247). In her written comments, she stated that the claimant was "*very* emotionally challenged. She began to think and *believe* she was the teacher. In my 34 years of teaching [all special education], I had not encountered an individual who presented as just learning disabled but slowly revealed a very deep psychiatric problem. She is very disturbed" (Tr. 248).

A state reviewing physician found that she had mild restriction of activities of daily living and maintaining concentration, persistence, or pace, and moderate difficulties in maintaining social functioning, with no episodes of decompensation (Tr. 452). Additionally, this examiner found that the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others (Tr. 456-457).

At the administrative hearing, the claimant described her work history, stating that she could work, but "can't handle a job all the time" (Tr. 62). She attributed that to anxiety attacks, and needing asthma treatments every four hours (Tr. 62-63). She testified that her asthma treatments took forty minutes at a time, every four hours (Tr. 64). As to side effects of her medications, she stated that her asthma medications made her shaky for two hours after every treatment, and that other medications make her sleepy (Tr. 68). Although her medications helped with depression and anxiety, she stated that she still experiences depression that she handles by staying in her room all day (Tr. 68-69). She stated that she had been unable to complete a year-long school program to be a medical assistant, and had dropped out after three months due to anxiety, struggles with the work, and test anxiety (Tr. 74-75).

Despite finding that the claimant's obesity, major depressive disorder, anxiety disorder, and PTSD were severe impairments, the ALJ spent much of her time discrediting the claimant's complaints related to these impairments. An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of

sedentary work.") [unpublished opinion]. The ALJ should have explained why the claimant's mental impairments, as well as her obesity, did not call for corresponding physical limitations related to her ability to handle work and function, as well as why he gave credence to the evidence related to the claimant's asthma, but not to these impairments. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

Furthermore, the ALJ should have considered the combined effect of all the claimant's impairments in assessing her RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no

further consideration. This was reversible error."). For example, the ALJ should at least have discussed the impact of the claimant's obesity on her other impairments at step four. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting "obesity is [a] medically determinable impairment [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *1, *5-*6, *7 (Sept. 12, 2002); *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). *See also Hamby*, 260 Fed. Appx. at 112 (discussing requirements of SSR 02-01p and finding that "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments."); *DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *6.

The ALJ also failed to provide a proper analysis of the medical opinions contained in the record. "An ALJ must evaluate every medical opinion in the record, although the

weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). "[T]he notice of the determination or decision must contain an explanation of the weight given to the treating source's medical opinion[s]." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Here, the ALJ merely *recited* the medical evidence (without providing any analysis of it under the governing standards for evaluating such evidence) and stated her conclusions without connecting them to the evidence.

Accordingly, the decision of the Commissioner must be reversed and the case remanded for further analysis of the claimant's RFC, including her severe mental impairments and obesity, and whether they had any additional and cumulative effects. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**